IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY L WALSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:16-cv-0884-MJR |
| ) | |
| JOHN BALDWIN, ) | |
| KIMBERLY BUTLER, ) | |
| C/O BENEFIELD, and ) | |
| ILLINOIS DEPARTMENT ) | |
| OF CORRECTIONS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Timothy Walston is currently incarcerated at the Menard Correctional Center in Menard, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Walston has filed a complaint under 42 U.S.C. § 1983, alleging that Officer Benefield, a corrections officer at Menard, failed to protect Walston from an attack by another inmate that the officer had a hand in instigating. (*Id.* at 5.) Walston has also named two officials with the Illinois Department of Corrections and the Department of Corrections itself as defendants, maintaining that they are liable for the officer's acts. (Doc. 1-1 at 2-6.) Walston's complaint does not include a request for relief, but the memorandum attached to his complaint, which the Court will treat as incorporated into the complaint for purposes of threshold review, asks the Court for money damages and a declaration that some of the Department of Corrections' policies are unconstitutional. (*Id.* at 6.)

This matter is now before the Court for a review of Walston's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government

entity." During the § 1915A review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim" or if it "seeks monetary relief from a defendant who is immune."

## Background

According to Walston's complaint, Walston has been incarcerated at Menard since at least 2014. (Doc. 1 at 6.) On October 23, 2014, he was told by Menard officials that he was moving from the North Upper 5 Gallery to North 2, 7 Gallery. (*Id.*) After he packed his property to make the move, he asked Corrections Officer Benefield why he was the one being moved when it was his cellmate, Pat Ingram, who was the one threatening Walston with violence. (*Id.*) Per Walston, Officer Benefield called Walston a snitch and then made him return to his cell to retrieve a cable cord. (*Id.*) When Walston walked towards his cell, his cellmate was standing in the doorway of the cell, waiting for him. (*Id.*) There were also three other "gallery workers" (seemingly other inmates) standing nearby, who yelled to "let them fight." (*Id.*) Officer Benefield purportedly nodded his approval but did not want the fight to happen on the gallery, so he told Ingram and Walston to take the fight to a nearby cell. (*Id.*) Walston claims that he refused to fight in or out of the cell, but Ingram began swinging, so Walston grabbed Ingram to stop the punches. (*Id.*) The fight evidently did not go well for Walston from that point on—he woke up in Menard's infirmary one-and-a-half hours later, and ultimately received fourteen stitches as a result of being knocked unconscious by Ingram. (*Id.*)

Walston claims that he filed a grievance concerning the fight on November 5, 2014. (*Id.* at 4.) Unsatisfied with the prison's response—and convinced that the fight happened not just because of Benefield's conduct but also because of the policies of the Department of

Corrections—he filed suit against Benefield, the Director of the Department, the Warden of Menard, and the Department of Corrections itself on August 5, 2016.  (Doc. 1; Doc. 1-1.)

## Discussion

While Walston has subdivided his complaint into three separate claims, the manner in which he has divided his claims is a bit duplicative and confusing, so the Court finds it proper to re-divide the complaint into the following counts.  The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.

**COUNT 1:** Corrections Officer Benefield violated Walston's Eighth and Fourteenth Amendment rights by failing to stop Ingram's assault on Walston, and Director Baldwin and Warden Butler are also liable for that conduct.

**COUNT 2:** The Illinois Department of Corrections contributed to the assault by failing to properly train Director Baldwin, Warden Butler, and Officer Benefield.

**COUNT 3:** The Illinois Department of Corrections facilitated the assault by enacting certain investigatory and disciplinary policies that impacted Menard.

Walston's complaint focuses on Benefield's failure to protect him, so the Court will start there (**Count 1**).  Walston says that the defendants' conduct violated both the Eighth Amendment and the Fourteenth Amendment of the United States Constitution, but Walston is a prisoner and not a detainee, so his cruel and unusual punishment claims are best channeled through the Eighth Amendment rather than the Fourteenth.  The Fourteenth Amendment protections, after all, are coextensive with the protections of the Eighth Amendment for prisoners, *Lunsford v. Bennett*, 17 F.3d 1574, 1583 (7th Cir. 1994), and Walston's theory under both amendments is the same, meaning that Walston gains nothing by "attracting additional constitutional labels."  *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).  Because Walston's Fourteenth Amendment claims are duplicative, they will be dismissed without prejudice.

To put forth a failure to protect claim under the Eighth Amendment, a prisoner must allege that an officer was present during the application of excessive force and had "reason to know" that "excessive force was being used" or that a "constitutional violation has been committed," and that the officer "had a realistic opportunity to intervene to protect the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001). When the Court construes Walston's complaint in a liberal fashion, he has alleged that Benefield observed the assault against him by the other inmates yet failed to intervene, and that is enough to put forth a claim at screening. Accordingly, **Count 1** may proceed as to Officer Benefield.

While Count 1 may proceed as to Benefield, it must be dismissed as to Director Baldwin and Warden Butler. To the extent that Walston is trying to loop Baldwin and Butler into his suit in their individual capacity, he should know that § 1983 creates a cause of action based on personal liability and predicated upon fault—an individual defendant "must have caused or participated in a constitutional violation" to be liable. *Pepper v. Vill. of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). A prison official can "participate" in a constitutional violation if he was responsible for creating the policies, practices, and customs that caused a constitutional deprivation, *Doyle v. Camelot Care Ctrs.*, 305 F.3d 603, 615 (7th Cir. 2002), but he cannot be held liable merely because he had supervisory authority over the prison employee who engaged in the improper acts, *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Walston has not alleged that Baldwin and Butler were either present for the assault or had reason to know that the assault against him would occur, nor has Walston included any developed allegations suggesting that Baldwin and Butler themselves created policies that led to the assault. As the Court will elaborate on below, Walston's only allegations as to policies, which are directed

primarily at the Illinois Department of Corrections' policy-related conduct, are conclusory, meaning that **Count 1** must be dismissed without prejudice as to Baldwin and Butler.

Walston goes on to allege that the Illinois Department of Corrections is liable for Benefield's conduct because it failed to properly train Benefield, Director Baldwin, and Warden Butler (**Count 2**). Failure to train claims like that can only proceed as official capacity suits against the State of Illinois itself, *see Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005), and a prisoner can only obtain injunctive relief by way of that suit, for Illinois and its agencies are immune from money damages. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). To put forth a failure to train claim, a litigant must allege that the failure rose to the level of an official custom or policy, and that the entity acted with deliberate indifference towards the rights of persons likely to come in contact with the entity's employees. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). Deliberate indifference could exist if the entity failed to conduct training in light of "foreseeable consequences," or if there was no training despite "repeated complaints of constitutional violations." *Rome v. Meyers*, 353 F. App'x 35, 36-37 (7th Cir. 2009).

In this case, Walston's allegations regarding the Department's training consist of roughly three sentences, and those allegations are too bare bones to put forth a claim, even one for injunctive relief. In his complaint and his attached memorandum, Walston says nothing about what training was missing, whether the need for more training was foreseeable, or whether there were repeated complaints of violations. He does allege that the Department was on "notice of a pattern of constitutional violations," but he does not offer anything developed as to the content or frequency of those violations. Because Walston's training-related claim is supported by conclusory allegations alone, **Count 2** must be dismissed without prejudice. *E.g.*, *Speck v.*

*Wiginton*, 606 F. App'x 733, 736-37 (5th Cir. 2015); *Glaser v. City & Cnty. of Denver, Colo.*, 557 F. App'x 689, 702 (10th Cir. 2014); *Aruanno v. Booker*, 384 F. App'x 69, 70 (3d Cir. 2010).

Walston's final claim is that the Illinois Department of Corrections facilitated the assault by maintaining policies and customs whereby it declined to investigate force-related incidents, declined to provide information to inmates, and declined to discipline employees (**Count 3**). As the Court already said above, the Department of Corrections can be sued for injunctive-related relief (but not money damages) if its policies, practices, or customs were the "moving force" behind a constitutional deprivation. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). While Walston references some policies or customs allegedly put into place by the Department in the memorandum of law attached to his complaint, his problem is that his investigation- and discipline-related policy allegations are just as bare bones as the allegations he offered in support of his failure to train claim. Walston's complaint and memorandum does not flesh out the content of the Department's policies, does not offer any allegations to suggest that the Department's behavior qualified as a custom or practice, does not lay out how the Department's customs caused his deprivation, and does not offer any real factual allegations to support his policy-related claims. Because Walston's policy-related claims are conclusory, **Count 3** must be dismissed without prejudice, too. *E.g.*, *Tripodi v. North Coventry Twp.*, 616 F. App'x 521, 523 (3d Cir. 2015); *Iacovangelo v. Corr. Med. Care*, 624 F. App'x 10, 13-14 (2d Cir. 2015); *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1330 (11th Cir. 2015).

One closing note is in order concerning Walston's references to Officer Benefield throughout the complaint. Walston has named Benefield as "John Doe Benefield" in the caption, suggesting that he is unsure if he has correctly spelled Benefield's name and that he is unsure about Benefield's first name. When a prisoner sues a John Doe officer without any identifying

information as to the officer's name, the Court typically adds (or leaves in) a high-level prison official as a defendant, in her official capacity only, so that the official can assist with the identification of the John Doe officer and the named officer can then be substituted as a defendant. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). That practice is not necessary here, though, as Walston's reference to "Benefield" is sufficiently specific to allow the Court to attempt to assist Walston with service of the complaint on Officer Benefield. If the Court is unable to locate Officer Benefield, the Court will reassess the need to add Warden Butler back into the case to assist with identification at that time.

## Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** as an Eighth Amendment claim against Corrections Officer **BENEFIELD**.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that **COUNT 3** is **DISMISSED without prejudice**. Because there are no further claims against them, **BALDWIN**, **BUTLER**, and the **ILLINOIS DEPARTMENT OF CORRECTIONS** are **DISMISSED without prejudice** from this case.

**IT IS FURTHER ORDERED** that Walston's motion for service of process (Doc. 4) is **GRANTED**. The Clerk of Court shall prepare for Defendant **BENEFIELD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to the Defendant's place of employment as identified by Plaintiff. If the Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the

Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon the Defendant (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on the Defendant or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Stephen C. Williams for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that Plaintiff's pending motion for recruitment of counsel (Doc. 3) is **REFERRED** to Magistrate Judge Williams for consideration.

Further, this entire matter is **REFERRED** to Magistrate Judge Williams for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all parties consent.*

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 9, 2016**

        **s/ MICHAEL J. REAGAN**
        **MICHAEL J. REAGAN**
        **United States Chief District Judge**