IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY L. WALSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:16 -CV-00884 -MAB |
| | ) |
| JOHN BALDWIN, KIMBERLY S. | ) |
| BUTLER, and KEITH BENEFIELD | ) |
| | ) |
| Defendants. | |

### MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff, Timothy L. Walston, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), alleges Eighth Amendment claims against Defendants Keith Benefield, a corrections officer at Menard Correctional Center ("Menard"); John Baldwin, the then Director of the IDOC; and Kimberly Butler, the Warden at Menard at the time. Plaintiff maintains that Benefield failed to protect him from a violent attack by his cellmate and did not follow appropriate procedures to keep him safe during a cell transfer. Plaintiff claims that Baldwin and Butler knew that Menard corrections officers were not following appropriate procedures in transferring inmates, but failed to take any action, which in turn contributed to the attack on him. Now before the Court is a partial motion for summary judgment filed by Baldwin and Butler (Doc. 144). For the reasons delineated below, the Court grants Defendants Baldwin and Butler's motion for summary judgment.

## PROCEDURAL BACKGROUND

Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. §1983 on August 5, 2016 (Doc. 1), alleging that while he was being transferred to a new cell at Menard, he was attacked by his cellmate, Mr. Pat Ingram, while Benefield supervised the transfer (Doc. 16, p. 2). Following a threshold review of the complaint pursuant to 28 USC § 1915A, Plaintiff was permitted to proceed on one claim, that Benefield violated Plaintiff's Eighth and Fourteenth Amendment rights by failing to stop Ingram's assault on Plaintiff (Doc. 16, pp. 4-5, 7).

Plaintiff filed an amended complaint on February 14, 2017 (Doc. 28) and, following a threshold review, was permitted to proceed on the following claims: (1) that Benefield allegedly failed to stop Plaintiff's cellmate from attacking him, in violation of the Eighth Amendment, and (2) that Baldwin and Butler allegedly knew guards were not following appropriate procedures, due to understaffing, and did not correct these practices, which led to Plaintiff's attack (Doc. 27, p. 7).

The Court's threshold review determined that Plaintiff could proceed against Baldwin and Butler in their individual capacities, because the doctrine of *respondeat superiour* is not applicable to §1983 claims (Doc. 27, pp. 2-3). Plaintiff was permitted to proceed on claims related to Butler and Baldwin's knowledge of the incident. *Id.*

Plaintiff was appointed counsel on December 8, 2017 (Doc. 84). Baldwin and Butler filed their partial motion for summary judgment on May 13, 2019 (Doc. 144). Plaintiff filed a response in opposition on June 17, 2019 (Doc. 145). No reply brief was filed.

Benefield has not moved for summary judgment; therefore, the claim against him will proceed to trial irrespective of what happens here.

### FACTUAL BACKGROUND

At all times relevant to his complaint, Plaintiff was incarcerated at Menard.[1] Defendant John Baldwin was the IDOC Director at the time (Doc. 145, p. 2). Defendant Keith Benefield is a Corrections Officer at Menard (Doc. 145-2 at 9:15-10:15) and Defendant Kimberly Butler was the Warden of Menard (Doc. 144-1 at 73:9-17).

On October 23, 2014, Benefield told Plaintiff that he was moving to a new cell in a different part of the prison (Doc. 145-1 at 32:7-24). Although Plaintiff and his cellmate, Robert "Pat" Ingram, did not get along, Plaintiff was surprised by the move because, generally, prison officials move the newer cellmate if there are disagreements between cellmates and Plaintiff had been in the cell longer than Ingram (Doc. 145-1 at 32:16-32:24). During that transfer, Plaintiff was attacked by Ingram (Doc. 145, p. 1). According to Plaintiff, Benefield watched the attack and even encouraged Ingram to begin the fight (Doc. 145-1 at 58:4-60:23). Plaintiff states that Benefield had previously been on notice, through conversations with both he and Ingram, that two of them did not like each other (Doc. 145-1 at 17:19-18:8; 29:4-29:15). Plaintiff was injured in the attack and had to seek medical care at the prison's medical center (Doc. 145-1 at 61:6-62:13). According to Plaintiff, Benefield violated two policies throughout this incident (Doc. 144, p. 2). First, Benefield allegedly violated the policy requiring two officers to transfer inmates when

---

[1] Plaintiff is now currently incarcerated at Lawrence Correctional Center (*See* Doc. 146).

there is a potential safety risk that could occur during the transfer, sometimes called the "two-officer escort policy" (Doc. 144, p. 2; Doc. 145, pp. 2-3). The second is that Benefield allegedly told Ingram and Plaintiff to fight, which is against the policies of the correctional facility (Doc. 144, p. 2; Doc. 145, p. 3).

Plaintiff's recitation of the facts focuses on the attack and Benefield's alleged involvement. Plaintiff believes Baldwin, as the then acting director, was responsible for ensuring that Benefield was doing his job "properly and correctly" (Doc. 145-1 at 70:4-70:7). Notably, this is the only reference to either Baldwin or Butler in Plaintiff's version of the facts.

## DISCUSSION

### I.   Summary Judgment Standard

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  *See Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7thCir. 2014) (citing FED. R. CIV. PROC. 56(a), *see also Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012)).   A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *See also Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011).

As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014). The moving party is entitled to judgment where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

## II. Eighth Amendment Failure to Protect

The Eighth Amendment prohibition on cruel and unusual punishment places a duty on prison officials to protect prisoners from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Not every harm, though, translates into "constitutional liability" for prison officials. *Id.* at 833-34, *see also Pinkston v. Madry,* 440 F.3d 879, 889 (7th Cir. 2006). To establish a violation of this right, a prisoner must demonstrate that a prison official was deliberately indifferent to an excessive risk to the prisoner's health or safety, which includes an objective and a subjective component. *Id.* First, the harm to which the prisoner was exposed must be one that is objectively serious. *See Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). Prison officials have a duty to "protect prisoners from violence at the hands of other prisoners." *Stewart v. Lakin,* 2018 WL 3216013 *2 (S.D. Ill. 2018) (citing *Farmer*, 511 U.S. at 833). "Being violently assaulted

in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society'." *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). So, to succeed on a failure to protect claim, an inmate must first demonstrate, objectively, that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The beating of one inmate by another "clearly constitutes serious harm." *Brown v. Budz,* 398 F.3d 904, 910 (7th Cir. 2005).

Second, the prison official must have actual knowledge of the risk to the inmate as constructive knowledge is not sufficient to establish a constitutional claim. *Farmer*, 511 U.S. at 834. A plaintiff must prove prison officials were aware of a specific, impending, and substantial threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996). "Conduct that simply amounts to 'mere negligence or inadvertence' is insufficient to justify the imposition of liability." *Pinkston v. Madry,* 440 F.3d 879, 889 (7th Cir. 2006) (quoting *Estate of Davis v. Johnson*, 745 F.2d 1066, 1070 (7th Cir. 1984)). To show that prison officials were aware of a specific, impending, and substantial threat to a prisoner's safety, the prisoner often shows that he complained to officials about that specific threat. *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015).

The Court's focus here is on the second part of this test and the role Butler and Baldwin played, if any, in the attack on Plaintiff. In other words, the Court must determine whether Butler and Baldwin had the requisite knowledge of a specific, substantial threat to Plaintiff's safety and then failed to act to protect him.

Plaintiff argues only a few facts in an attempt to link Butler and Baldwin to the events leading to his attack to show they had actual knowledge of the threat to his safety.

Plaintiff's main arguments fall into two categories: (1) that Butler and Baldwin are supervisors and should ensure their employees are following appropriate protocols, generally, and (2) that Butler and Baldwin had knowledge that their subordinates were not following appropriate procedures when overseeing cell transfer.

### A. Plaintiff claims Butler and Baldwin are supervisors tasked with ensuring subordinates follow appropriate protocols

In his response to Defendants' motion for summary judgment, Plaintiff argues that the nature of Baldwin and Butler's roles at IDOC and Menard, respectively, are supervisory and that they must ensure employees follow procedures to avoid harm to inmates (Doc. 145, p. 2) In its previous threshold order, the Court determined that Plaintiff could bring claims against Butler and Baldwin in their individual capacities alone, since the doctrine *respondeat superiour* is not applicable to §1983 claims; therefore, both Butler and Baldwin can only be held liable if they were "personally responsible for the deprivation of a constitutional right" (Doc. 27, p. 2-3) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). The Court directed Plaintiff to allege claims related to Butler and Baldwin's knowledge of the incident to determine if they "act[ed] or fail[ed] to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occur[red] at [their] direction or with [their] knowledge or consent" (Doc. 27 at 3). Ultimately, in order to be liable, "[s]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001); *Chavez v. Ill. State*

*Police,* 251 F.3d 612, 651 (7th Cir. 2001).

Plaintiff relies on his own testimony and opinions to argue that Butler and Baldwin violated his constitutional rights. Plaintiff argues that Butler and Baldwin "play an important rule[sic] in staffing the prison and ensuring that their employees follow basic protocol to avoid risk of serious harm to the inmates" (Doc. 145, p. 2). Plaintiff believes that Baldwin must ensure that the officers are "doing their due diligence as they work" (Doc. 145-1 at 70:4-70:7). This sole conclusory statement is all that Plaintiff cites to in order to describe Baldwin's knowledge of and role in his attack.

To further describe Butler and Baldwin's supervisory roles and what they entail, Plaintiff relies on Benefield's testimony, particularly one section in which he testified that his position at Menard was "controlled by someone else" (Doc. 145, p. 3). Plaintiff does not explicitly link this statement to Butler and Baldwin, though, and, when more closely analyzed, this characterization of the evidence is inexact. Benefield testified that when he arrived at work, he was sometimes assigned to a specific post and "sometimes they'll put you wherever they need you" (Doc. 145-2 at 13:23-14:3). There is nothing in the record to suggest that either Baldwin or Butler are the individuals directing Benefield or that they have any knowledge as to Benefield's daily actions or inactions, generally, or any of his actions or inactions related to Plaintiff's attack.

To support his opinion further, Plaintiff argues that he will testify, in the future, that staffing is controlled by Butler and Baldwin. Once he does, Plaintiff argues it will show that Butler and Baldwin were aware they were deliberately indifferent by not ensuring two guards were staffed appropriately for transfers posing a safety risk, or they

were "unconcerned about whether any transfers involve situations where there was a heightened risk of assault to an inmate" (Doc. 145 at 6). This argument misapprehends the purpose of summary judgment. Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dept. of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). The nonmovant must identify record evidence (not future evidence) to create a genuine dispute of material fact and stave off summary judgment. *Id*. Ultimately, Plaintiff's contentions about Butler and Baldwin's supervisory role lack any evidentiary support and misunderstand summary judgment.

### B. Plaintiff claims Butler and Baldwin knew subordinates were not following appropriate cell transfer procedures

Plaintiff also argues that Defendants Butler and Baldwin were aware that guards at Menard were not following appropriate procedures and policies regarding cell transfers due to understaffing. Plaintiff argues, in particular, that all inmate cell transfers where there is a "reasonable risk that a safety event could occur" should be staffed by at least two correctional officers, also known as the two-officer escort policy (Doc. 145 at 3). Plaintiff argues that Butler and Baldwin knew corrections officers were not following appropriate procedures and did nothing to address this issue, which makes them culpable for the October 23, 2014 attack.

Plaintiff identifies this purported policy or practice in his deposition, but fails to provide any evidence connecting this purported policy with his alleged constitutional deprivations. Plaintiff's contention that having only one guard present at his transfer led

to his assault is entirely predicated on one conclusory statement that he made at his deposition (Doc. 145-1 at 68:13-69:19). There is also no evidence that Butler and Baldwin were aware of the risk created by this purported policy or practice. In fact, there is no evidence in the record to even show that this was a widespread policy or practice, as the only evidence is Plaintiff's statement in his deposition. Plaintiff states he read there is a two-officer escort policy in some sort of handbook another inmate showed him, although he could not remember the specifics of the policy he read (Doc. 145-1 at 69:5-19).

Plaintiff also relies heavily on a portion of Benefield's deposition, which he claims clearly demonstrates all prisoner transfers posing a reasonable risk of a safety incident should be staffed by two correctional officers. Plaintiff attempts to use this portion of Benefield's deposition to assert that Butler and Baldwin were aware of correctional officers not following this policy and the substantial risk understaffing inmate transfers caused. However, a review of Benefield's deposition reveals that Plaintiff is mistaken (Doc. 145 at 2-3). Defendant Benefield testified that more than one officer would, generally, be present for transfers if an inmate was being combative or going into segregation (Doc. 145-2 at 17:8-22). When asked if there was a *requirement* that more than one officer be present when an inmate was moved, Benefield responded: "[t]he only way that I could say that if they were, it would be because the inmate is being combative. Possibly going to segregation or something like that we *might* have extra security, just in case things get out of hand" (Doc. 145-2 at 17:8-16) (emphasis added).

Plaintiff must show that Defendants' policies or practices were the "moving force" behind the constitutional deprivations he suffered. *Minix v. Canarecci*, 597 F.3d 824, 832

(7th Cir. 2010). In short, Plaintiff must demonstrate that Butler and Baldwin were aware of a specific, substantial threat to his safety and did nothing to protect him. *Pope,* 86 F.3d at 92. *See also Pinkston*, 440 F.3d at 889.

Even when viewing the evidence in the light most favorable to Plaintiff, there is nothing to suggest that Baldwin or Butler had any actual knowledge of the events leading up to and through the October 23, 2014 attack. Similarly, there is nothing in the record to remotely suggest that Butler or Baldwin contributed in some way to the attack, such as through understaffing. The link between Benefield's actions (or inactions) that allegedly contributed to Plaintiff's attack and Butler and Baldwin's knowledge of the attack is simply not in the record. In fact, Plaintiff testified he could not say if Baldwin had any idea that officers were violating any purported policies. When asked if he had any evidence that Baldwin was aware of officers violating the two-officer escort policy, he testified, "They keep a tight ship around here…so I don't know what's going on with them outside…So I can't tell you who knows what" (Doc. 145-1 at 70:13-71:3). Similarly, he testified that he did not have any evidence that Butler knew about Benefield allegedly violating the two-officer escort policy (Doc. 145-1 at 71:9-14).  Notably, Butler and Baldwin were not deposed, so the only evidence about their involvement in the record is from either Plaintiff's deposition or Benefield's deposition.

Without knowledge of a substantial risk to Plaintiff's safety, Butler and Baldwin could not respond reasonably to a risk of inmate safety. *See Farmer*, 511 U.S. at 844-845. There is simply no evidence in the record to support any of Plaintiff's theories of liability against Butler or Baldwin with respect to the October 23, 2014 attack. Without this

necessary evidentiary proof, Plaintiff has failed to show an essential element of his case. *Celotex Corp.*, 477 U.S. at 323. Therefore, Butler and Baldwin are entitled to summary judgment on Plaintiff's claims.

### III.     Qualified Immunity

Butler and Baldwin also moved for summary judgment on the basis of qualified immunity. The Court has already determined that no reasonable juror could find for Plaintiff on his Eighth Amendment claims against Butler and Baldwin and summary judgment will be entered in their favor. Therefore, the Court need not analyze or reach a determination as to the issue of qualified immunity.

### CONCLUSION

For the above-stated reasons, Defendant Butler and Baldwin's motion for summary judgment (Doc. 144) is **GRANTED**. Defendants Butler and Baldwin are **DISMISSED with prejudice** as Defendants in this case. At the close of this case, the Clerk of Court shall enter judgment in favor of Defendants Butler and Baldwin and against Plaintiff Walston as to Plaintiff's claim for failure to protect (Count 2). Plaintiff's failure to protect claim against Defendant Benefield (Count 1) remains pending.

IT IS SO ORDERED.

DATED:   April 30, 2020

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
